IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Brandon Lee Martin, | C/A No. 0:15-1570-PMD-PJG |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Warden Joseph McFadden, *Lieber CI*; Dr. Thomas Byrnes, *Lieber CI*; Elizabeth Holcomb, *N/P*; Luanne Mauney, *R/N*; Kirsten Wathens, *R/N*; Kirkland Specialty Clinics, *supervisors/operators*; Sgt. Christopher Smith, *Perry CI*; Lt. Cashwell, *Perry CI*; Dr. McCrey, | |
| Defendants. | |

Plaintiff Brandon Lee Martin, a self-represented state prisoner, filed this action against the named defendants pursuant to 42 U.S.C. § 1983. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the defendants' motion for summary judgment. (ECF No. 77.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Martin of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (ECF No. 79.) Martin filed a response in opposition to the defendants' motion.[1] (ECF No.

---

[1] To the extent Martin may be attempting to raise additional claims in his response in opposition which were not presented in the Complaint, such as a claim for a declaration that certain South Carolina Department of Corrections policies are unconstitutional, such claims are not properly before the court. White v. Roche Biomedical Laboratories, Inc., 807 F. Supp. 1212, 1216 (D.S.C. 1992) (holding that "a party is generally not permitted to raise a new claim in response to a motion for summary judgment"); see also Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 400 (6th Cir. 2007) (holding that a party may not expand its claims to assert new theories in response to summary judgment).

87.) Having reviewed the parties' submissions and the applicable law, the court finds that the defendants' motion should be granted.

## BACKGROUND

The following facts are taken in the light most favorable to Martin, to the extent they find support in the record. Martin's Complaint asserts claims pursuant to 42 U.S.C. § 1983 alleging excessive force stemming from an incident that occurred on April 10, 2013 at Perry Correctional Institution during which Martin was forcibly extracted from his cell by a team of corrections officers. During this forced cell extraction, Martin alleges he was sprayed with chemical munitions and that he suffered a "Class III ligament separation to the AC joint in his left shoulder." (3d Am. Compl., ECF No. 66-1 at 6.) Martin alleges that, following this incident, he was promptly seen by the medical staff, received pain medication, received x-rays, and was seen by an orthopaedist. (Id.) Martin alleges he continued to receive medical care until he was transferred to Lieber Correctional Institution, at which time he alleges the medical staff at Lieber was deliberately indifferent to his medical needs in that they did not provide him any additional treatment, discontinued his pain medication, and would not allow him to receive surgery on his shoulder. (Id. at 8–12.) Martin seeks monetary damages and surgery on his shoulder. (Id. at 12–13.)

## DISCUSSION

### A.     Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish



the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

B.     **Defendants' Motion for Summary Judgment**

1.     **Exhaustion of Administrative Remedies**

The defendants argue that Martin failed to exhaust his administrative remedies with regard to his claims. A prisoner must exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Moreover, exhaustion is required even when a prisoner seeks remedies, such as money damages, that are not available in the administrative proceedings. See Booth v. Churner, 532 U.S. 731, 740-41 (2001). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review. See generally id. Those remedies neither need to meet federal standards, nor are they required to be plain, speedy, and effective. Porter, 534 U.S. at 524 (quoting Booth, 532 U.S. at 739). Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus, "it is the prison's requirements, and not the [Prison Litigation Reform Act], that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). The defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005).



...

Pursuant to South Carolina Department of Corrections policy, an inmate seeking to complain of prison conditions must first attempt to informally resolve his complaint. Next, an inmate may file a "Step 1 Grievance" with designated prison staff. If the Step 1 Grievance is denied, the inmate may appeal to the warden of his facility via a "Step 2 Grievance." Moreover, review from the South Carolina Administrative Law Court ("ALC"), a state executive-branch tribunal, is generally part of the available administrative remedies an inmate must exhaust.[2] S.C. Code Ann. § 1-23-500 ("There is created the South Carolina Administrative Law Court, which is an agency and court of record within the *executive* branch of the government of this State.") (emphasis added); see Furtick v. S.C. Dep't of Corr., 649 S.E.2d 35, 38 (S.C. 2007) (reaffirming that "the ALC has jurisdiction over all inmate grievance appeals that have been properly filed") (citing Slezak v. S.C. Dep't of Corr., 605 S.E.2d 506 (S.C. 2004)); see also SCDC Policy GA-01.12 (http://www.doc.sc.gov/pubweb/ (choose "Research," then choose "SCDC Policies," accept the disclaimer, then follow the "GA-01-12 — GA-01.12, 'Inmate Grievance System,' May 12, 2014" hyperlink) (last visited June 16, 2016)) ("As part of [SCDC's] final answer to a grievance, the inmate will be notified that any further appeal must be initiated within 30 days after receipt of [SCDC's] final answer. This appeal must be contained on the South Carolina Administrative Law Court "Notice of Appeal" that will be attached to [SCDC's] final answer and must be sent to the Administrative Law Court.")

---

[2] South Carolina case law has established certain exceptions not applicable here. See Howard v. S.C. Dep't of Corr., 733 S.E.2d 211, 215-18 (S.C. 2012) (interpreting a post-Furtick statutory amendment to S.C. Code Ann. § 1-23-600(D) and holding that the ALC lacked jurisdiction over an inmate's appeal involving the loss of the opportunity to earn sentence-related credits and no state-created property or liberty interest); Travelscape, LLC v. S.C. Dep't of Rev., 705 S.E.2d 28, 38-39 & n.10 (S.C. 2011) (stating that the ALC is without jurisdiction to hear facial challenges to the constitutionality of a regulation or statute but may rule on as-applied challenges); Howard, 399 733 S.E.2d at 218 (applying the holding in Travelscape, LLC to challenges to prison policies).



As an initial matter, it is clear from the evidence provided by the defendants that Martin did not file any grievance with regard to his claim of excessive force. In support of their exhaustion argument, the defendants provide a December 2013 Step 1 grievance and a February 2014 Step 2 grievance filed by Martin in which he complains about the medical care he has received for his shoulder since arriving at Lieber. (ECF Nos. 77-3 & 77-9.) Martin specifically references this Step 1 grievance in his Complaint when identifying the steps he took to exhaust his administrative remedies, alleging that he "used the prisoner gr[ie]vance procedure available at Lieber" and "[o]n 12-29-2013 . . . presented the facts relating to this complaint on a grievance form." (3d Am. Compl., ECF No. 66-1 at 9-10.) Importantly, these grievances make no mention of the excessive force incident that allegedly occurred on April 10, 2013. Martin does not address the defendants' exhaustion argument in his response in opposition to summary judgment. Accordingly, on the record presented, the defendants are entitled to dismissal of Martin's claim of excessive force due to his failure to exhaust his administrative remedies.

The defendants also argue that Martin failed to exhaust his administrative remedies due to his failure to seek review of his Step 2 grievance by appealing to the Administrative Law Court. As discussed above, the record is clear that Martin filed a Step 1 and Step 2 grievance regarding his medical care. Although Martin does not directly address the defendants' argument that he did not appeal his Step 2 grievance to the Administrative Law Court, he states in his initial, verified Complaint filed April 6, 2015 that, as of the date he filed his Complaint, he had still not received a response to his Step 2 grievance. (3d Am. Compl., ECF No. 66-1 at 10.) "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

Page 6 of 14



Review of Martin's Step 2 grievance reveals that the grievance was returned to Martin several months after he filed his federal Complaint—approximately *seventeen months* after he submitted his Step 2 grievance. (ECF No. 77-9.) Courts have held that an administrative remedy may be viewed as "unavailable" under the PLRA when a prisoner files a grievance but has not received a timely determination. See Moore, 517 F.3d at 725 ("[T]o be entitled to bring suit in federal court, a prisoner must have utilized all available remedies in accordance with the applicable procedural rules, so that prison officials have been given an opportunity to address the claims administratively. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond.") (internal citation and quotation omitted); Boyd v. Corr. Corp. of Am., 380 F.3d 989, 996 (6th Cir. 2004) (concluding that "administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance"); Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002) ("[W]e agree that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable . . . ."); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) ("[W]e refuse to interpret the PLRA so narrowly as to . . . permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances.") (internal quotation omitted); Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001) (finding that a prison's failure to respond to a prisoner's informal resolution request was a sufficient basis on which to deny dismissal of his claims based on the prisoner's failure to exhaust his administrative remedies); Powe v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999) ("A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired."); Mann v. Scott, Civil Action No. 0:14-3474-RMG, 2015 WL 5165198, at *4 (D.S.C. Sept. 1, 2015) ("Prison officials may not take unfair advantage of the

exhaustion requirement, and a remedy becomes "unavailable" if prison employees do not respond to a properly filed grievance, or if they otherwise act to prevent a prisoner from exhausting his administrative remedies."); McMichael v. Pate, C/A No. 8:13-263-TMC, 2014 WL 793070, at *9 (D.S.C. Feb. 24, 2014) (adopting recommendation that dismissal of a prisoner's claims due to the prisoner's failure to exhaust be denied when the prisoner filed his federal complaint over eleven months after receiving no response to his Step 2 grievance); see also Ross v. Blake, — S. Ct. —, 2016 WL 3128839, at *, (June 6, 2016) ("[A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."). Although Martin eventually received a response to his Step 2 grievance, this response was received long after the time period established by SCDC policy,[3] after Martin commenced this action, and the defendants do not address this issue in their motion or any reply memorandum. Because the defendants have failed to establish that further administrative remedies were "available" to Martin after he filed his Step 2 grievance, the court declines to recommend dismissal of Martin's claim of deliberate indifference with regard to his medical needs for failure to exhaust his administrative remedies. Accordingly, this claim is addressed on the merits, below.

---

[3] The court may take judicial notice of the South Carolina Department of Corrections grievance process, specifically SCDC Policy GA-01.12, which states in relevant part, "The responsible official will render the final decision on the [Step 2] grievance within 90 days from the date that the IGC received the appeal of the Warden's decision." See http://www.doc.sc.gov/pubweb/ (choose "Research," then choose "SCDC Policies," accept the disclaimer, then follow the "GA-01-12 — GA-01.12, 'Inmate Grievance System,' May 12, 2014" hyperlink) (last visited June 16, 2016).



### 2. Eighth Amendment—Deliberate Indifference to Medical Needs

Deliberate indifference by prison personnel to a prisoner's medical needs is actionable under the Eighth Amendment to the United States Constitution. See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). To establish a claim under the Eighth Amendment, an inmate must establish two requirements: (1) a sufficiently serious deprivation occurred, resulting "in the denial of the minimal civilized measure of life's necessities," and (2) the prison official had a sufficiently culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the second prong, an inmate must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety. Id. A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. Id. at 847; Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004). To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. However, because even a subjective standard may be proven through circumstantial evidence, "a prison official cannot hide behind an excuse that he was unaware of a risk, no matter how obvious." Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015) (quoting Brice v. Va Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995)). Therefore, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that a risk was obvious." Makdessi, 789 F.3d at 133 (quoting Farmer, 511 U.S. at 842).

Not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105. To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th



Cir. 1990). Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. See Estelle, 429 U.S. at 106. While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks & citation omitted) (alterations in original); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Courts have recognized that "lay people are not qualified to determine . . . medical fitness, whether physical or mental; that is what independent medical experts are for." O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005); see also Nelson, 603 F.3d at 449 ("A prisoner's disagreement as to the appropriate treatment fails to rise to the level of a constitutional claim and fails to create a genuine issue of material fact."); Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment."); Fleming v. Lefevere, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion.").

PJG

Martin has failed to provide evidence from which a reasonable jury could find deliberate indifference to his medical needs. Martin alleges that Doctors Thomas Byrne[4] and John McCrey, and Nurses Elizabeth Holcomb, Luanne Mauney, and Kirsten Wathens, denied him treatment for his shoulder injury after his transfer to Lieber. In support of their motion, the defendants have provided the affidavits of Defendants Thomas E. Byrne, M.D.; Elizabeth Holcomb, N.P.;[5] and Luanne Mauney, R.N., as well as Martin's health records outlining the times Martin was examined by medical staff and the treatment provided.

The defendants' affidavit testimony provides a summary of the extensive care that Martin received for his shoulder injury both prior to his transfer to, and during his incarceration at, Lieber, including multiple x-rays, orthopaedic examinations, physical therapy, and pain medications. Importantly, Dr. Byrne avers that, upon Martin's arrival at Lieber, Martin informed Dr. Byrne that the orthopaedist had informed him that his left shoulder separation was not operable and had recommended Ultram for his pain. (Byrne Aff. ¶ 6, ECF No. 77-6 at 1.) Dr. Byrne further avers that, after reviewing Martin's medical records that included a history of malingering and manipulation while taking medications that had the potential for abuse, Byrne did not reinstate Martin's six-month Ultram prescription that was getting ready to expire, instead finding that Ultram was not medically necessary and prescribing Mobic for his pain. (Id. at ¶¶ 7-9, ECF No. 77-6 at 2.) Review of Martin's medical records while at Lieber reveal multiple complaints of shoulder pain, as

---

[4] This defendant is more properly identified as Thomas E. Byrne, M.D. (See Byrne Aff., ECF No. 77-6 at 1.)

[5] The affidavit of Nurse Holcomb does not appear to contain her signature. (See Holcomb Aff., ECF No. 77-7 at 4.) Consideration of this evidence, however, is not material to the court's recommendation.



well as repeated requests for Ultram and other drugs specifically deemed not appropriate or medically necessary by Dr. Byrne, including muscle relaxers, Neurontin, and Tramadol. Notably, when Martin complained that he reinjured his shoulder in July 2014, Dr. Byrne prescribed Ultram for a week and then extended the prescription through a second week. (Byrne Aff. ¶ 13, ECF No. 77-6 at 2.) Byrne also swears that he had multiple conversations with Martin in which he told him that, based on the recommendations from the orthopaedists, Martin was not a surgical candidate, surgery on his shoulder was not medically necessary, and that any surgery on his shoulder would have to be elective and paid for by Martin. (Byrne Aff. ¶¶ 15-18, ECF No. 77-6 at 3.) This evidence belies Martin's claims that he did not receive any treatment for his shoulder injury and precludes any reasonable conclusion otherwise.

      The indisputable record shows that Martin was seen a substantial number of times by the medical department at Lieber during the approximately twenty-one months prior to filing his Complaint. Although Martin argues that the defendants refused to allow him to have surgery on his shoulder and appears to allege that he did not receive the medication of his choice, as stated above, a prisoner's disagreement unsupported by any expert testimony as to the appropriate treatment fails to rise to the level of a constitutional claim and fails to create a genuine issue of material fact. See Jackson, 846 F.2d at 817; Nelson, 603 F.3d at 449; see also O'Connor, 426 F.3d at 202; Dulany, 132 F.3d at 1240; Fleming, 423 F. Supp. 2d at 1070. At most, Martin's claim alleges negligence or medical malpractice, which is not actionable under § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n.3 (1986); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) ("The district court properly held that Daniels bars an action under § 1983 for negligent conduct."); Ruefly v. Landon, 825 F.2d 792,

793-94 (4th Cir. 1987); see also Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

## RECOMMENDATION

For the foregoing reasons, the court recommends that the defendants' motion for summary judgment be granted. (ECF No. 77.)

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 17, 2016
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).